UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHAD JAMES WILLMS,

                Plaintiff,

v.                                                   Case No. 22-cv-421-pp

REDGRANITE CORRECTIONAL INSTITUTION,
ERIC BARBER, WARDEN DANIEL CROMWELL,
TERRENCE JAEGER, DALLAS J. GEHRKE,
CHRISTOPHER HOCH and CHAD KELLER,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      Chad James Willms, who is incarcerated at Fox Lake Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On May 3, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $29.68. Dkt. No. 14. After giving the plaintiff several extensions of time to pay the initial partial filing fee, the court received the balance of the initial partial filing fee on November 1, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include

2

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff alleges that he was incarcerated at Redgranite Correctional Institution when the events described in the complaint occurred. Dkt. No. 1 at 2. He has sued Redgranite, Warden Daniel Cromwell, Deputy Warden Eric Barber, Captain Chad Keller, Lieutenant Christopher Hoch, Unit Supervisor Terrence Jaeger and Sergeant Dallas Gehrke. Id. at 1, 2.

3

The plaintiff alleges that the defendants failed to protect him from assaults by two other incarcerated persons on two separate occasions. Id. at 2. He states that he went to the "M.O.S." (presumably the movement officer station) to speak with Keller before each assault and he stressed concerns about his safety. Id. at 3. The plaintiff allegedly sent messages to Jaeger, Keller and Hoch about concerns for his safety, including what would happen if they did not act, and they responded that it was the plaintiff's responsibility to conduct himself appropriately. Id. The plaintiff alleges that "they"—he does not specify which defendants—disregarded an email he sent by saying, "on investigation," and "they" said he did not directly state he was being threatened, but the plaintiff says his message was straightforward about the situation. Id.

The plaintiff alleges that on July 29, 2020, he was holding his meal tray when an incarcerated person named Mr. Reed targeted him and punched him "double fisted to chest." Id. The plaintiff states that while in the health services unit getting photos of his bruised ribs, he explained that Reed had been taking food from his tray and targeting him. Id. at 3-4. Reed allegedly went to segregation and then returned to the plaintiff's unit. Id. at 4. The plaintiff says that "RGCI was known for this." Id. He allegedly "put kites to staff, went to M.O.S., talked to staff in person, e-mailed, nothing was done." Id. The plaintiff alleges that on August 19, 2020, Reed attacked him in the courtyard by brutally punching and kicking him about fifty times. Id. The plaintiff says his injuries included "long term issues," bleeding from the ears, cuts, a neck

4

injury, nausea, headaches and that he received stitches. Id. The plaintiff says that when the assault occurred, staff "had not been in the court yard with 200 men that can be in yard and there was not guards at station watching camera. To stop assault." Id. at 3.

After the attack by Reed, the plaintiff alleges that Reed's friend, who the plaintiff refers to as "John Doe," started "accusations and threats." Id. at 4. The plaintiff states that he went "to MOS and again nothing was done [even though] this inmate was a lifer and had a history." Id. Around September 1, the plaintiff allegedly told Keller about his concerns, but Keller did not deem them "SPN worthy" (presumably special placement need) and dismissed the plaintiff's concerns. Id. The plaintiff says he was attacked in the bathroom, with no guard at the station once again, and that he suffered a twisted ankle and black eye, which HSU noted. Id. According to the plaintiff, he did not say anything after the attack because he feared he would be returned to the unit and labeled a snitch. Id. The plaintiff says he later was put in segregation and it was documented that the lieutenant (he does not say which one) told the plaintiff that if he just told what happened, he'd be let out of segregation. Id. The plaintiff alleges that "we"—presumably the plaintiff and John Doe—were put on the same units together with an adjoined courtyard. Id. He says that when he started making complaints, he was threatened and transferred to another institution. Id.

The plaintiff seeks compensatory damages as well as staff training, a prohibition on putting incarcerated persons who are "having problems" on the

5

same units, placement of three guards in every station or one in the yard and "accountability for" grievances. Id. at 5.

C. Analysis

The plaintiff named Redgranite Correctional Institution as one of the defendants. "[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. § 1983." Johnson v. Supreme Court of Ill., 165 F.3d 1140, 1141 (7th Cir. 1999). This means that "[n]either the State of Wisconsin nor the State's Department of Corrections is a proper defendant." Andreola v. Wisconsin, 171 F. App'x 514, 515 (7th Cir. 2006). Redgranite is an institution within the Department of Corrections. Because it is not a "person" subject to suit under §1983, the court will dismiss Redgranite Correctional Institution as a defendant.

The Eighth Amendment to the United States Constitution requires prison officials to protect incarcerated persons from violence at the hands of other incarcerated persons. See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994). However, not "every injury suffered by one prisoner at the hands of another [ ] translates into constitutional liability for prison officials." Id. at 834. The Eighth Amendment's prohibition against cruel and unusual punishment "obligates prison officials to take 'reasonable measures to guarantee the safety of . . . inmates.'" LaBrec v. Walker, 948 F.3d 836, 841 (7th Cir. 2020) (quoting Sinn v. Lemmon, 911 F.3d 412, 419 (7th Cir. 2018)). Prison officials who do not protect one incarcerated individual from violence at the hands of another may be found liable under the Eighth Amendment only if two requirements are met:

6

(1) the incarcerated person must have been exposed to a risk of objectively serious harm, and (2) the prison official must have had actual knowledge of that risk and responded with deliberate indifference. See id.; see also Farmer, 511 U.S. at 837-38.

The plaintiff has alleged sufficient facts to allow him to proceed on a claim that he faced a risk of objectively serious harm. See, *e.g.*, Brown v. Budz, 398 F.3d 904, 910 (7th Cir. 2005) (holding that "a beating suffered at the hands of a fellow detainee . . . clearly constitutes serious harm"). The plaintiff also has alleged that he warned Keller, Jaeger and Koch that Reed was going to attack him, and that he warned Keller that John Doe was going to attack him, but that these defendants disregarded his concerns. At this stage, these allegations satisfy the subjective prong of an Eighth Amendment failure to protect claim. See LaBrec, 948 F.3d at 841; see also Gevas v. McLaughlin, 798 F.3d 475, 480-81 (7th Cir. 2015); Santiago v. Walls, 59 F.3d 749, 758-59 (7th Cir. 2010). The plaintiff may proceed on his Eighth Amendment claim against Keller, Jaeger and Hoch.

The plaintiff also has sued Cromwell, Gehrke and Barber. He has not, however, alleged that these defendants knew that Reed and/or John Doe posed a threat to him. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003).

7

Regarding supervisors, the personal responsibility requirement is satisfied if the constitutional deprivation occurs at the supervisor's direction or with the supervisor's knowledge and consent. Id. In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (quoting Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995)). The plaintiff has not alleged that Cromwell, Gehrke and Barber had any involvement in or knowledge of the threats from Reed or John Doe; the plaintiff cannot proceed against them.

Although it is not entirely clear, the plaintiff also seems to be alleging that Redgranite had a practice of not adequately staffing officers in the courtyard or to view security cameras, and perhaps a practice of housing in the same units incarcerated persons whom staff were aware had issues with each other. The plaintiff does not allege that the attacks would not have occurred if the courtyard had been adequately staffed or if officers had been viewing the cameras. He implies, but does not allege, that the attacks by Reed (which occurred in the dining hall and the courtyard) and Doe resulted from being placed on the same unit; the plaintiff says he was "attacked" in a bathroom but does not say by whom. To the extent that the plaintiff wants to sue a defendant in his or her official capacity for injunctive relief based on a prison practice, his request is moot because he no longer is incarcerated at Redgranite Correctional Institution and there is no indication he will be returned there. See Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011) (injunctive relief moot because plaintiff transferred to different facility and no indication of "a realistic possibility that

8

he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains"); Ortiz v. Downey, 561 F.3d 664, 668 (7th Cir. 2009).

The plaintiff may proceed against Keller, Jaeger and Hoch based on his failure-to-protect-claims under the Eighth Amendment. The court will dismiss the remaining defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Redgranite Correctional Institution, Daniel Cromwell, Dallas Gehrke and Eric Barber.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Terrence Jaeger, Christopher Hoch and Chad Keller. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$320.32** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2).

The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Fox Lake Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 26th day of January, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**